UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RENEE A. MOONIER, )<br>)<br>Plaintiff, )<br>)<br>v. )  No.  4:19 CV 1928 CDP<br>)<br>ANDREW M. SAUL, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Renee Moonier brings this action under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's denial of her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*.  Because the Commissioner's final decision is not supported by substantial evidence on the record as a whole, I will reverse the decision and remand the case for further consideration.

## I.     Procedural History

On April 4, 2017, Moonier filed an application for DIB, alleging a period of disability beginning August 3, 2016.  Moonier listed several limiting medical conditions in her Disability Report, including numerous bulging discs, sciatica, degenerative advanced arthritis, chronic obstructive pulmonary disease, herniated discs L3 and L4, irritable bowel syndrome, herpes, carpal tunnel, trigger fingers,

and colo/rectal polyps. (Tr. 166.) Her application was denied on July 13, 2017. (Tr. 74.) Moonier timely filed an appeal for a hearing by an Administrative Law Judge (ALJ), and a hearing was held on December 4, 2018. (Tr. 26.) On January 22, 2019, the ALJ issued a decision finding that Moonier was not disabled. (Tr. 6.) The Appeals Council denied Moonier's request for review of the ALJ's decision on May 28, 2019. (Tr. 1.) Moonier has thus exhausted her administrative remedies, and the decision of the ALJ is the final decision of the Commissioner. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Legal Standards

To be eligible for SSI under the Social Security Act, Moonier must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four.

At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform her past work, the Commissioner continues to Step Five and determines whether the claimant, with her RFC and other vocational factors, can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not disabled, and disability benefits are denied.

The claimant bears the burden through Step Four of the analysis. If she

meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007). I must consider both the evidence that supports the Commissioner's decision, as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Id.* I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

### III.     Evidence Before the ALJ

With regard to Moonier's medical records and other evidence of record, the Court adopts Moonier's Statement of Facts, ECF 11, and notes that the Commissioner has adopted the facts *in toto*. ECF 12. After a thorough review of the entire record, I find that the adopted facts are accurate and comprehensive. Specific facts will be discussed in the following Discussion section as needed.

### IV.     Discussion

A. The ALJ's Decision

The ALJ determined that Moonier met the insured status requirements of the Social Security Act through December 31, 2021, and that Moonier had not engaged in substantial gainful activity since August 3, 2016, the alleged onset date of disability. (Tr. 11.) At Step Two, the ALJ determined that Moonier had severe impairments including degenerative disc disease and obesity. (*Id.*) The ALJ also found that Moonier had several non-severe impairments, including asthma, cataracts, irritable bowel syndrome, colon polyps, herpes, carpal tunnel syndrome and trigger finger, and a minor impairment in her left lower leg. (Tr. 11-12.) The ALJ further found that Moonier's alleged chronic obstructive pulmonary disorder (COPD) was a non-medically determinable impairment due to the absence of a diagnosis in the record. (Tr. 12.)

At Step Three, the ALJ determined that Moonier did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 12.)

After considering the entire record, the ALJ determined that Moonier retained the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(b), except that she

> can occasionally lift, carry, push, and pull 10 pounds.  She can sit for 6 hours, and stand and/or walk for 2 hours.  The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  The claimant can never climb ladders, ropes, or scaffolds.  She can never work at unprotected heights or near moving mechanical parts.

(Tr. 12.)  The ALJ then determined that Moonier was capable of performing past relevant work as a "traffic clerk," which the ALJ classified as Dictionary of Occupational Tables (DOT) Code 214.587-014, sedentary work with an SVP of 4 (Tr. 16.)  Comparing Moonier's RFC with the physical and mental demands of the traffic clerk job, the ALJ determined that Moonier was "able to perform it as generally performed."  (*Id.*)  The ALJ further referenced the testimony of vocational expert (VE) James Israel, who testified that Moonier could perform the job "as it is generally performed given her [RFC]."  (*Id.*)  The ALJ thus concluded that Moonier was not disabled as defined by the Social Security Act.  (Tr. 17.)

Moonier raises two issues on appeal.  First, Moonier contends that the ALJ erred at Step Four in determining that she could return to her past relevant work as

6

a traffic clerk. Moonier asserts that she actually worked as a "traffic field technician," and not as a "traffic clerk," and so the ALJ erred in determining that she could perform any past relevant work. Second, Moonier asserts that the ALJ's Step Two finding that her asthma constitutes a non-severe impairment is not supported by substantial evidence.

In response, the Commissioner urges the Court to find that the ALJ's erroneous classification of Moonier's past relevant work was harmless, and that substantial evidence supports her determination that Moonier retained the RFC to perform her past work as a traffic technician. The Commissioner further asserts that the ALJ's finding that Moonier's asthma constituted a non-severe impairment is supported by substantial evidence. While I agree with the Commissioner on the latter point—substantial evidence supports the ALJ's Step Two determinations, as well as the ALJ's broader assessment as to Moonier's RFC—I cannot say that the ALJ's obvious misclassification of Moonier's past relevant work is harmless, and so I will remand this matter for reconsideration.

B. Vocational Expert's Testimony

The primary issue raised on appeal concerns the ALJ's Step Four determination that Moonier was capable of performing past relevant work as a "traffic clerk," a job which Moonier has never actually held. It appears that the ALJ's erroneous classification of Moonier's past job is largely attributable to the

7

testimony of the vocational expert, and so I will summarize the relevant portion of the expert's testimony here before assessing the legal effects of the error.

At her hearing before the ALJ, Moonier testified that she had held three jobs in the past, and had most recently worked as a "field technician" for a "traffic engineer."[1] (Tr. 31.)  Describing her job functions, Moonier stated that she conducted traffic field surveys in which she recorded the number of cars and pedestrians which passed through a given area over varying periods of time, in addition to some miscellaneous clerical tasks in an office.  (Tr. 31.)  The ALJ asked the VE to identify Moonier's position in the Dictionary of Occupational Titles (DOT), and he incorrectly classified her job as "traffic clerk," instead of "traffic technician."[2]  (Tr. 52.)

---

[1] Only the "traffic technician" position is relevant here, as it is the only position which the ALJ determined that Moonier could still perform in light of her RFC.  (Tr. 16.)

[2] "Traffic Clerk," DOT Code 214.587-014, is classified as a sedentary exertional job with an SVP of 4.  The job duties are described in the DOT as follows:

> Records incoming and outgoing freight data, such as destination, weight, route-initiating department, and charges: Ensures accuracy of rate charges by comparing classification of materials with rate chart. May keep file of claims for overcharges and for damages to goods in transit.

"Traffic Technician," DOT Code 199.267-030, is classified as a light exertional job with an SVP of 7.  The job duties are described in the DOT as follows:

> Conducts field studies to determine traffic volume, speed, effectiveness of signals, adequacy of lighting, and other factors influencing traffic conditions: Analyzes traffic volume and interviews motorists at assigned intersections or other areas where congestion exists or where disproportionate number of accidents have occurred. Determines average speed of vehicles, using electrical timing devices or radar equipment. Times stoplight or other delays, using stopwatch. Observes lighting, visibility of signs and pavement markings, location of traffic signals,

The VE then testified that the "traffic clerk" position was listed as semi-skilled and sedentary in the DOT; however, the VE stated: "[E]ven though [Moonier] was sitting in the car with the counting, going back to the office, where there was sitting, I'm thinking in total it was probably performed closer to light, just getting in and out of the vehicle all the time." (Tr. 53.) The ALJ then questioned the VE regarding his assessment that Moonier performed the job at "closer to light [exertion]," highlighting Moonier's testimony that she sat for 95% of the day and lifted three pounds on the job. (*see* Tr. 31, 53.) The VE responded that even though certain job functions "meets much of sedentary," that there were other "elements" associated with the job, like "going in and out of the vehicle – of the truck," which more closely resembled light work. (Tr. 53.)

The ALJ then asked whether the DOT identified the position as sedentary or light, to which the VE responded that it was sedentary.[3] (Tr. 53.) The ALJ asked the VE to explain the discrepancy and assess whether the work "was actually done

---

width of street or roadway, and other considerations affecting traffic conditions. Draws graphs, charts, diagrams, and similar aids to illustrate observations and conclusions. Computes mathematical factors for adjusting timing of traffic signals, speed restrictions, and related data, using standard formulas. Prepares drawings of proposed signal installations or other control devices, using drafting instruments. May prepare statistical studies of traffic conditions. May recommend changes in traffic control devices and regulations on basis of findings.

The Commissioner concedes that Moonier's position was misclassified by the VE, and that Moonier's past relevant work was a position as a "traffic technician," and not as a "traffic clerk." ECF 12 at pg. 7.

[3] Again, while this was true of the incorrect "traffic clerk" position, it was not true of Moonier's actual "traffic technician" position, which is classified as light work.

9

at light, or actually done at sedentary[.]" (Tr. 54.) Attempting to clarify, the VE posed a series of questions to Moonier, including, "was there many times in the day you were going in and out of the vehicle, or were you mostly in the vehicle?" and "what percentage of the day did you spend standing, and what percentage did you spend sitting?" (Tr. 54-55.) Moonier responded that the job was "75% sitting, 25% walking around, going to the different offices, up and down the stairs." (Tr. 55.) The VE then testified that the position was "right on the border," and that while "we can actually call this sedentary, . . . it's very much right on the edge of being light, based on that mobility." (Tr. 55.) Ultimately, the VE testified that the "traffic clerk" job is sedentary per the DOT and as performed by Moonier, although he again qualified his answer by saying the job is "almost on the edge of light," but "sedentary because of the 75% number." (Tr. 55.)

      The ALJ then asked the VE whether a hypothetical individual of Moonier's age and education who can perform work at the light exertional level, can occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, occasionally balance, stoop, kneel, crouch and crawl, and can never work at unprotected heights or around moving mechanical parts, could perform any of Moonier's past work. (Tr. 55-56.) The VE testified that Moonier's "traffic engineer job" would be precluded due to Moonier's testimony regarding getting in and out of a vehicle and climbing into a truck. (Tr. 56.)

10

The ALJ then asked the VE the same hypothetical, except the individual would be limited to work at the sedentary exertional level. (Tr. 56.) Confusingly, the VE testified that this hypothetical individual could perform Moonier's past "traffic clerk job" both as described in the DOT and as described by Moonier, despite previously testifying that the individual could *not* perform the same job if limited to work at the light exertional level. (Tr. 56.) The ALJ asked the VE to explain why an individual limited to sedentary work could perform Moonier's past job, while an individual limited to light work could not; the conversation between the ALJ and VE is somewhat difficult to follow, but the VE eventually appeared to change his answer, stating that an individual could perform Moonier's job under either hypothetical, as in, if limited to sedentary or light work. (Tr. 59.)

C. The ALJ's Step Four Determination

Although the Commissioner concedes that the ALJ erred in misclassifying Moonier's past relevant work, the Commissioner notes that Moonier presented evidence indicating she performed the traffic technician job at the sedentary level; therefore, according to the Commissioner, the ALJ's error was harmless, and substantial evidence supports the ALJ's determination that Moonier could perform her past job as she performed it in light of the RFC limiting her to sedentary work, despite the "light" classification of the position as listed in the DOT.

11

At the outset, I disagree with the Commissioner that any error by the ALJ in classifying Moonier's past relevant work is harmless. In order to show that an ALJ's error was not harmless, the claimant must provide "some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). Moonier contends that her past relevant work as a traffic technician requires, among other things, "walk[ing] through parking lots and garages" to count cars, and the ability to "get in and out of a truck or van," both of which resemble light work.[4] These duties are consistent with the description of the traffic technician position listed in the DOT Code 199.267-030, consistent with Moonier's testimony before the ALJ, and consistent with the VE's testimony as to the potential demands of the job.[5]

---

[4] In her Work History Report, (Tr. 194), Moonier further described her job duties as follows:

> Arrived at destination for count, set up counter, sat in auto and counted cars and people in crosswalks. Went back to office, helped office manager, and went back out to count other jobs needing to be done. All jobs had a specific start/finish time. Average count was 4 hours. During rush hours we did have 6, 9 or 12 hour jobs. Also had parking lot & parking garage jobs, which were manual counts on cars at specific intervals. Writing and/or completing reports includes: computer or written work to help manager, mostly accounting.

[5] The VE repeatedly testified that there are certain aspects of the traffic field technician job, as described by Moonier, which require light exertion: "Even though they were sitting in the car with the counting, going back to the office, where there was sitting, I'm thinking in total it was probably performed closer to light, just getting in and out of the vehicle all the time." (Tr. 53.) "So we can actually call this sedentary, but it's very much on the edge of being light, based on that mobility." (Tr. 55.) "Going up – in and out of the vehicle, you're climbing into a truck, so there's no climbing. . . . The never climbing the – or the truck may be an issue where it verges on the potential of it being a problem." (Tr. 56.) "[B]ecause of the totality of going – [Moonier] described the steps, and all of that, so if I have to make a judgment as to whether I think it falls in that [sedentary exertional level] or not. So I'm going to say no." (Tr. 56.)

Had the ALJ correctly identified Moonier's past relevant work and fully considered its light exertion classification in the DOT, including the specific aspects of the job necessitating some heightened degree of mobility, it is quite possible that the ALJ would have found that Moonier's RFC limiting her to a reduced range of sedentary work precluded her from performing this past relevant work. Moreover, because the ALJ determined that Moonier could not perform any other past relevant work, the ALJ's error was not harmless—the ALJ did not produce evidence demonstrating that Moonier has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and other vocational factors. *Phillips*, 671 F.3d, at 702.

More fundamentally, this matter must be remanded because the ALJ's Step Four determination is not supported by substantial evidence. In her written opinion, the ALJ found "that [Moonier] is able to perform [her past relevant work] *as generally performed*." (Tr. 16.) (emphasis added) This is plainly incorrect, as Moonier's past traffic technician job is generally performed at the light exertional level, and there is no evidence that Moonier would be capable of performing it as it is generally performed—indeed, such a conclusion would contradict the ALJ's well-reasoned RFC limiting Moonier to a reduced range of sedentary work. The Commissioner insists that the ALJ would have nonetheless found that Moonier was capable of performing her past technician job as *she* performed it, emphasizing

13

Moonier's testimony suggestive of performance at the sedentary level. (*See, e.g.*, Tr. 55.) However, the ALJ did not explicitly reach this conclusion, and in fact, even noted in her opinion that Moonier performed the job "at closer to the light exertional level." (Tr. 16.) There is a subtle but important distinction between finding that a claimant is capable of performing a position "as generally performed" versus "as performed by the claimant," and under these circumstances, I will not rewrite the ALJ's opinion in order to infer a conclusion she evidently did not reach herself.

Moreover, the ALJ committed reversible error in relying on the faulty testimony of the VE in concluding that Moonier could perform her past relevant work. The ALJ cited the VE's testimony to support a conclusion that "[Moonier] could perform this past relevant job *as it is generally performed* given her [RFC]." (Tr. 16.) (emphasis added) Once again, this conclusion is plainly incorrect, because Moonier's actual past relevant work is generally performed at the light exertional level, and Moonier's RFC limits her to sedentary work. When the testimony of a VE conflicts with the DOT, and the DOT classifications are not rebutted, the DOT classification controls. *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). The correct DOT classification was not identified by the VE, thus it could not have been rebutted. Accordingly, because the unrebutted "light" classification of Moonier's past job conflicts with the VE's testimony, the VE's

14

testimony does not constitute substantial evidence to support the ALJ's Step Four determination.

Finally, the Social Security Administration has established procedures the ALJ must follow before relying on the testimony of a VE in situations where, as here, the VE's testimony regarding the demands of a position conflict with the description of the position in the DOT. Specifically, Social Security Regulation 00-4p provides:

> When there is an apparent unresolved conflict between the VE . . . and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE. . . . At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

In *Kemp ex rel. Kemp v. Colvin,* 743 F.3d 630, 633 (8th Cir. 2014), the Eighth Circuit construed SSR 00–4p as placing on the ALJ an affirmative responsibility to ask about "any possible conflict" between VE evidence and the DOT, and to obtain an explanation for any such conflict, before relying on VE evidence to support a determination the claimant is not disabled.[6] Conversely, "[w]hen an ALJ has posed a hypothetical that accurately reflects his RFC finding, questioned the VE about any apparent inconsistencies with the relevant DOT job descriptions, and

---

[6] In that case, the ALJ's RFC assessment limited the claimant to only occasional overhead reaching with each upper extremity. When posed with a hypothetical question that included this limitation, the VE testified that claimant could perform the work of check weigher. The DOT, however, indicated this job to require constant reaching. The Eighth Circuit determined this to be a "possible conflict" and remanded the matter to the Commissioner to obtain an explanation for the conflict. *Id.* at 633.

15

explained his decision to credit the VE's testimony, the ALJ has complied with SSR 00–4p, and we review his decision under the deferential substantial evidence standard." *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014); *see also Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014).

Here, the ALJ failed to question the VE about the inconsistencies between his assessment and the relevant DOT job description, because the relevant DOT job description was not discussed during Moonier's hearing. And, as mentioned previously, there are certain aspects of the traffic technician job—both as listed in the DOT and as described by Moonier—which require performance at the light exertional level. Accordingly, the ALJ's decision is reversed and remanded for reconsideration of whether she can perform her past relevant work as a traffic technician.

D. The ALJ's Step Two Determination

Moonier additionally argues that the ALJ erred at Step Two in failing to classify her asthma as a "severe" impairment. Moonier contends that, had the ALJ properly assessed her asthma as severe, the ALJ would have included additional limitations in Moonier's RFC.

Substantial evidence supports the ALJ's determination that Moonier's asthma is a non-severe impairment. Moonier's medical records consistently classify her asthma as "mild" and "intermittent." (Tr. 337-39, 340-41, 397, 399,

16

453, 480.) Numerous unremarkable examinations throughout the reported period of disability reflect that Moonier's lungs were clear, with no wheezing or auscultation and normal respiratory effort. (Tr. 305, 339, 341, 347, 350, 393, 399, 403, 406, 413, 423, 429, 434, 443, 453, 468, 480, 494). Moonier also repeatedly denied shortness of breath. (Tr. 319, 350, 389, 442, 452, 467, 478, 493.) The record contains no indication that she has ever been hospitalized for asthma-related problems, and there is no basis to consider her treatment for sinusitis and an upper respiratory infection as evidence of an asthma-related exacerbation. (Tr. 468.) The record also contains evidence that Moonier has continued to smoke, despite numerous recommendations to quit. (Tr. 302, 346, 412, 429, 442, 470, 479, 482, 494, 496.) Her continued smoking weighs against her complaints of asthma-related symptoms. *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006); *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997). For all these reasons, substantial evidence supports the ALJ's decision that Moonier's asthma constitutes a non-severe impairment, and upon a review of the entire record, I find no other basis to second guess the ALJ's Step Two assessments or her well-supported RFC assessment.

However, because this case will be remanded, I remind the ALJ that a Step Two determination of non-severe is not necessarily the end of the inquiry: "When a claimant has multiple impairments, 'the Social Security Act requires the

Commissioner to consider the combined effect of all impairments without regard to whether any such impairment, if considered separately could be of sufficient medical severity to be disabling.'" *Gann v. Colvin*, 92 F. Supp. 3d 857, 881 (N.D. Iowa 2015) (quoting *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000)). In evaluating whether Moonier can perform her past relevant work as a traffic technician, the ALJ must therefore also consider whether her asthma, in combination with her other impairments, may be considered disabling.

E. Conclusion

"While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case, inaccuracies, incomplete analyses and unresolved conflicts of evidence can serve as a basis for remand." *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005). The ALJ committed reversible error in concluding that Moonier retained the RFC to perform past relevant work which she had not ever performed. The ALJ further erred in relying on the fundamentally flawed testimony of the VE who failed to recognize the apparent conflict between the DOT and his assessment of Moonier's past work. Ultimately, because substantial evidence does not support the ALJ's determination that Moonier can perform a job which is generally performed at an exertional level exceeding her RFC, this matter is remanded for

18

reconsideration of whether Moonier is capable of performing any of her past relevant work.

On remand, should the ALJ again rely on the testimony of a VE in determining whether Moonier can perform her past relevant work, and if a VE again opines that Moonier can do so in light of her RFC, the ALJ is reminded of her obligation to question the VE regarding any possible conflicts between the correct job description in the DOT and the VE's testimony. *Kemp,* 743 F.3d, at 633; SSR 00-4p. If the ALJ concludes that Moonier cannot perform any past relevant work, the ALJ must then assess whether there are other jobs which exist in the national economy that Moonier would be capable of performing, keeping in mind the additional considerations necessitated by Moonier's status as a person of advanced age. *See* 20 CFR §§ 404.1560(c)(2), 404.1563(e). The ALJ's decision as to whether Moonier can perform any past relevant work—and her ultimate status of non-disabled—may not change after obtaining and properly considering all relevant evidence and undergoing the required analysis; however, the determination is nevertheless one that the Commissioner must make in the first instance. *See Pfitzer v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** in part as set forth herein, and this cause is **REMANDED** for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 26th day of October, 2020.